IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

LARRY F. LITTON,                          )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )          No. 2:17-CV-127
                                          )
STATE OF TENNESSEE DEP'T OF HUMAN         )
RESOURCES, and STATE OF TENNESSEE,        )
                                          )
        Defendants.                       )


## MEMORANDUM OPINION

This civil action is before the Court for consideration of Defendants' motion for

summary judgment.  [Doc. 46].  Plaintiff has filed a response, and Defendants have

submitted a reply.  [Docs. 50, 52].  For the reasons that follow, Defendants' motion for

summary judgment [doc. 46] will be granted and this case will be dismissed.

## I.      Background

Plaintiff's second amended complaint alleges that he was subjected to reverse gender

discrimination, after he applied for several positions with various agencies of the State of

Tennessee, all of which were ultimately filled with female applicants.  [Doc. 34].

Specifically, Plaintiff states that he submitted six total applications through the Department

of Human Resources ("DOHR"): four for Eligibility Counselor 1 positions in the

Department of Human Services ("DHS"); one for a position as a Case Management

Program Specialist in the Department of Intellectual and Developmental Disabilities

("DIDD"); and one for a position as a Clinical App Coordinator with the Department of Health ("DOH").[1]  [*Id*. at 2].  Plaintiff states that his applications were submitted to DOHR, all communication were with DOHR, and DOHR was responsible for reviewing applications to verify that applicants meet the minimum qualifications.  [*Id*.].  Plaintiff states that, for each position, DOHR stated that he was unqualified, however, this basis was merely pretext, and he possessed the necessary skills and experience for each position.  [*Id*. at 6-7].  Plaintiff states that he was well-qualified for each position and "likely more qualified" than the candidates selected, but was not considered due to his gender.  [*Id*. at 7].  Plaintiff seeks compensatory damages against each named defendant.  [*Id*.].

Notably, Plaintiff filed a charge of discrimination against the "State of Tennessee Department of Human Resources" with the United States Equal Employment Opportunity Commission ("EEOC") and received a notice of right to sue.  [Doc. 34 at 4; Doc. 34-1].  This Court previously dismissed this action as to DHS, DIDD, and DOH, because Plaintiff failed to exhaust his administrative remedies against these agencies.  [Doc. 39 at 9].  However, the Court allowed the case to proceed as to Defendants DOHR and the State of Tennessee.  [*Id*. at 11-12].

The following facts are taken from the evidence submitted by the parties in support of their positions on the motion for summary judgment.  DOHR coordinates job postings and the application process for preferred service government positions.  [Doc. 48-1 at 1-2].

---

[1] Evidence presented at the summary judgment stage indicates that Plaintiff applied for several other positions with the State, but because Plaintiff does not mention these applications or positions in his second amended complaint, the Court will deem such evidence beyond the scope of this action.

DOHR confirms applicants' minimum qualifications based on objective criteria, and applicants meeting minimum qualifications are invited to participate in a first-round interview, which consists of answering questions provided by the hiring agency on an online survey. [Doc. 48-1 at 2, 7; Doc. 48-2 at 2]. DOHR ensures that the first-round interview questions are compliant with state and federal equal employment opportunity laws. [Doc. 48-1 at 2; Doc. 48-2 at 2]. Once the first-round interview period has ended, DOHR provides the hiring agency with the list of eligible candidates and the applicants' responses to the first-round interview questions, but does not review the interview responses. [Doc. 48-1 at 3, 8; Doc. 48-2 at 2]. Rather, the hiring agency reviews those responses and selects candidates for second-round interviews. [Doc. 48-1 at 3, 8-9; Doc. 48-2 at 2].

Plaintiff never applied for any position with DOHR, rather, he applied for, *inter alia*, positions with DHS, DIDD, and DOH. [Doc. 48-1 at 3; Doc. 48-2 at 3]. DOHR included Plaintiff on the list of eligible candidates for each of these positions. Ultimately, the decisions concerning the selection of candidates for second-round interviews, and the ultimate hiring decisions, are made by the hiring agency, not the DOHR. [*Id.*]. DOHR also confirms that hiring agencies comply with Tennessee's veterans' preference law by confirming receipt of bypass letters, which are required when a hiring agency passes over an eligible veteran in favor of a non-veteran, reviewing the contents of all bypass letters, and critiquing the reasons cited. [Doc. 48-1 at 3]. DOHR's review of Plaintiff's bypass letters confirmed that the reasons provided by the hiring agencies were reasonable and related to the job descriptions and agency preferences. [Doc. 48-1 at 4; Doc. 48-2 at 4]. In

general, the hiring agencies did not consider Plaintiff's experience to be the specific type of experience necessary for the position. [Doc. 48-1 at 4]. As of July 1, 2016, there were 13 male and 75 female Eligibility Counselor 1s, and 188 male and 965 female Eligibility Counselor 2s. [*Id.* at 4, 16]. Moreover, DOHR referred 87 male applicants to DHS as eligible candidates for their Eligibility Counselor 1 positions, 6 male applicants to DOH for its Clinical App Coordinator position, and 18 male applicants to DIDD for its Case Management Program Specialist position. [*Id.* at 5, 16].

On March 30, 2016, Plaintiff applied for the position of Eligibility Counselor 1 with DHS (Job Posting 1-033016-15713). [Docs. 50-3; 52-1]. The job posting for this position listed various knowledge, skills, abilities, and competencies ("KSACs") required for the position. [Doc. 48-2 at 13-19; Doc. 50-2].[2] Of relevance, the posting mentions customer service skills numerous times, and states that the applicant should "[p]romote[] a positive image of the department by focusing on great customer service while fulfilling the Department's mission." [*Id.*].

In his application and accompanying resume, Plaintiff indicated that he had obtained an associate's degree in nursing in 1972, a master's degree in nurse anesthesia in 1976, and a bachelor's degree in nursing in 1997. [Doc. 50-3 at 1; Doc. 52-1 at 78, 82]. He indicated that he had worked as a nurse anesthetist from 1976 to 2001, was self-employed in that

---

[2] The Court notes that the job posting for Eligibility Counselor 1 which was submitted by both Defendants and Plaintiff in support of their positions on the motion for summary judgment, does not include any job posting number, but appears to be a generic copy of the posting for this position. The Court will assume for purposes of this motion for summary judgment that this posting is the same as the posting made for each of the four Eligibility Counselor 1 job postings at issue.

position, and retired in 2001. [Doc. 50-3 at 1; Doc. 52-1 at 78]. However, he indicated that his monthly salary for this position was $0. [*Id*.]. In his attached resume, Plaintiff stated that he had 25 years' experience as a certified registered nurse anesthetist, and was also a "former Police Officer, Deputy Sheriff, Drug Enforcement Officer, business owner, Adult Cardiac Life Support Instructor and Major in the United States Army." [Doc. 52-1 at 82]. He also stated that he had previously "owned one commercial retail business" and was the "former president of one medical private corporation." [*Id*.]. However, Plaintiff provided no further detail in his application about these prior positions.

Plaintiff was selected by DHS for a second-round interview. [Doc. 48-1 at 5]. However, after the second-round interviews, DHS selected another candidate. In a memorandum to DOHR regarding the veteran bypass letter for this position, DHS stated that "[a]fter the second-round interview. Mr. Litton was not selected due to his lack of experience working with a vulnerable population and coordinating services for individuals and families, which is preferred for this position." [Doc. 48-2 at 7; Doc. 52-1 at 88]. The agency further stated that Plaintiff lacked customer service experience which it deemed "vital for this position." Further, the agency explained that Plaintiff's "experience is limited to the medical field with his most recent experience as a nurse anesthetist." [*Id*.].

DHS ultimately hired Traci Lambert for this position. [Doc. 48-1 at 5]. On her application for this job posting, Lambert indicated that she had obtained a bachelor's degree in organizational management and early childhood education in 2007. [Doc. 50-4 at 1]. At the time, she was working for Advanced Patient Advocacy, and noted that her position required her to visit patients in their homes or on the phone and provide screening

services for patients to secure health and disability services. She also stated that she worked with facility staff in coordinating services for individual patients on a daily basis. [*Id*.]. Prior to taking that position, she had worked as a Family Service Specialist for the Palm Beach County Head Start Program for approximately 15 years, where she assisted low-income families with enrolling their pre-school age children in the Head Start program, which involved direct contact with the families. [*Id*. at 2]. DOHR states that, based on her application, Lambert had previously worked in the customer service field with vulnerable populations and coordinated services for individuals and families. [Doc. 48-1 at 6].

Plaintiff apparently applied for three other openings for Eligibility Counselor 1 positions, on May 11, 2016 (Job Postings 1-051116-152625 and 1-051116-152623) and June 23, 2016 (Job Posting 1-062216-153450). None of the parties have provided Plaintiff's application for these openings, and, based on this record, the Court presumes that Plaintiff submitted the same materials as he submitted for the first Eligibility Counselor 1 position for each of the subsequent Eligibility Counselor 1 position openings.

DHS selected Plaintiff for a second-round interview for the May 11, 2016, job posting ending with 152625. [Doc. 48-1 at 5]. Thereafter, DHS explained a memorandum to DOHR regarding Plaintiff's veteran bypass letter that, after a second-round interview, Plaintiff was not selected "due to his lack of experience in case management, which is preferred for this position" and because he lacked "customer service and interviewing skills, which are vital to this position." [Doc. 48-2 at 8; Doc. 52-1 at 89]. The memorandum also stated that Plaintiff's "experience is limited to the medical field while in the US military and in the private sector as a nurse anesthetist." [*Id*.].

DHS ultimately selected two candidates to fill this open position: Yolanda Jobe and Jennifer Frank. [Doc. 48-1 at 6]. In her application for the Eligibility Counselor 1 job posting ending in 152625, Jobe stated that she sought a transfer from the Department of Children's Services, where she worked as a secretary. [Doc. 50-5 at 1]. She also noted that she had previously worked in contracts and collections for Actions Rentals and Sales, and had significant prior experience as a geologist. [*Id*. at 2-3]. In her geologist positions, Jobe noted that she "[m]anage[d] and overs[aw] a wide range of . . . activities" and "[d]irected site remediation projects[.]" [*Id*.].

In her application for the Eligibility Counselor 1 job posting ending in 152625, Jennifer Frank stated that she obtained a bachelor's degree in psychology in 2007. [Doc. 50-6 at 1]. She also noted that she was then serving as a case manager for Comcare, a position which required her to manage a "caseload of 18-19 clients." [*Id*.]. Frank also stated that she had worked with DHS in the position of Eligibility Counselor II for approximately three years previously, which she had left to take care of her elderly grandfather. [*Id*. at 2]. Frank stated that she had also previously held three separate positions as a case manager, including two with the Department of Children's Services. [*Id*. at 2-3]. DOHR concludes that both Frank and Jobe had either prior state government experience, customer service experience, and/or experience in case management. [Doc. 48-1 at 6].

DHS also selected Plaintiff for a second-round interview for the May 11, 2016, job posting ending in 152623. [Doc. 48-1 at 5]. Thereafter, DHS explained in a memorandum to DOHR regarding the veteran's bypass letter that, after a second-round interview,

Plaintiff was not selected "due to his lack of customer service experience, which is vital to this position." [Doc. 48-2 at 9; Doc. 52-1 at 90]. DHS also noted that Plaintiff had "no experience directly interacting with the public." Furthermore, DHS stated that Plaintiff's "experience is limited to the medical field while in the US military and in the private sector as a nurse anesthetist." [*Id*.].

DHS ultimately selected Wendy Berry for this open position. [Doc. 48-1 at 6]. In her application for the Eligibility Counselor 1 position ending in 152623, Berry noted that she had prior experience determining TennCare eligibility and coordinating TennCare enrollment in her position as a Public Health Office Assistant/Translation Services/Training Specialist at the Carter County Health Department. [Doc. 50-7 at 1]. She also noted that she was fluent in Spanish, and was seeking an opportunity to utilize this skill. [*Id*. at 1, 3-4]. Berry listed several prior position, including a position as a high school teacher, which she noted involved maintaining professional student, colleague, and parent relationships. [*Id*. at 2]. DOHR concludes that Berry had customer service experience in the public sector setting and foreign language skills that would allow her to assist clients with limited English capabilities. [Doc. 48-1 at 7].

DHS again selected Plaintiff for a second-round interview for the June 23, 2016, job posting ending with 153450. [Doc. 48-1 at 5]. Thereafter, DHS explained in a memorandum to DOHR regarding Plaintiff's veteran bypass letter that, after a second-round interview, Plaintiff was not selected based on his "not having any previous experience working in case management or interpreting and implementing policy." [Doc. 48-2 at 12]. DHS also cited Plaintiff's lack of customer service and interviewing skills,

which it deemed vital, as contributing to the decision. Finally, DHS noted that Plaintiff's experience was limited to the medical field while in the U.S. Military and in the private sector with his most recent long-term experience as a nurse anesthetist. [*Id*.].

DHS ultimately selected Tina McNutt for this position. [Doc. 48-1 at 7]. DOHR concluded, based on her application, that McNutt had experience in case management and interpreting and implementing policy.[3] [Doc. 48-1 at 7].

On May 10, 2016, Plaintiff applied for the position of Case Management Program Specialist with DIDD (Job Posting 050416-152421). [Doc. 50-10]. Plaintiff's application contained the same information as his application for the position of Eligibility Counselor 1 with DHS. [Doc. 50-10]. DIDD did not select Plaintiff for a second-round interview. [Doc. 48-1 at 8]. In a bypass letter, DIDD stated that Plaintiff was not selected for an interview for this position, because he was deemed over-qualified for the position. [Doc. 48-2 at 10; 52-1 at 91]. DIDD selected Amy Jordan.[4] [Doc. 48-1 at 8].

On June 20, 2016, Plaintiff applied for the position of Clinical App Coordinator 1 with DOH (Job Posting 1-061516-153288). [Doc. 50-14]. The posting for this position specifically stated that applicants were required to have some relevant education or experience in the area of health informatics. [Doc. 48-2 at 26; Doc. 50-11 at 1]. On his application, Plaintiff included substantially the same information as on his prior applications, discussed above. However, Plaintiff explained the duties of his prior position

---

[3] McNutt's application was not included in the documents submitted to the Court.

[4] Jordan's application was not included in the documents submitted to the Court.

as a nurse anesthetist, stating that he had "[e]xtensive knowledge of all areas of health area and relevant health sciences." [Doc. 50-14 at 1]. Additionally, in response to the first-round interview question "Do you have coursework in Health Informatics," Plaintiff responded "no," but to the question "Do you have experience in Health Informatics," Plaintiff responded "yes." [*Id*. at 4].

DOH did not select Plaintiff for a second-round interview. [Doc. 48-1 at 8]. In a memorandum to DOHR regarding Plaintiff's veteran's bypass letter, DOH stated that Plaintiff "does not possess the medical/clinical knowledge or skills to perform the job." [Doc. 48-2 at 11; Doc. 52-1 at 92]. DOH ultimately hired Katherine Snyder for this position, whom DOHR concluded had prior medical and clinical knowledge and skills.[5] [Doc. 48-1 at 8].

In his deposition, Plaintiff testified that he felt that the reasons contained in the bypass letters "did not apply" to him because he "ha[d] areas of expertise in all those area[s] and [he was] qualified in all those areas; probably more[] so than the candidates." [Doc. 52-1 at 8]. Plaintiff stated that he believed that "with [his] extensive experience on all parameters of these jobs, . . . [he] was the best-qualified candidate for the position," and did not believe that "any of these people could have or probably have as much experience in these areas" as him. [*Id*. at 13]. Plaintiff stated that, because women were selected for each of the positions, he believed that his rejection was due to his gender. [*Id*. at 13]. When asked why he believed that his education was superior to that of other candidates, Plaintiff

---

[5] Snyder's application was not included in the documents submitted to the Court.

responded that he had "focused [his] career on helping individuals through—either with [his] education or experiences—through all parameters of these positions." [*Id*. at 14].

As to the specific reasons provided, Plaintiff disagreed with the statement that he did not possess the necessary medical or clinical knowledge or skills for the DOH position. [Doc. 52-1 at 28]. As to the statement that he lacked experience with assisting individuals with disabilities in obtaining/maintaining employment, Plaintiff stated that this did not apply because he had worked with disabled people as a registered nurse. [Doc. 52-1 at 29-30]. Plaintiff also contended that he had prior customer service experience, noting that he previously owned a store and ran a professional corporation called Anesthesia Provider Group. [Doc. 50-15 at 5; Doc. 52-1 at 31]. Plaintiff also stated that he had experience working with vulnerable populations and coordinating services for individuals and families because he had "worked for vulnerable populations . . . [his] entire life" since "90 percent of the people in a vulnerable population have medical/health issues[.]" [Doc. 50-15 at 3]. When asked about his experience in case management, Plaintiff stated that it "depends on what kind of case management you're talking about, whether it's in the private sector, or whether it's in the medical care field, whether it's in the military. They're all case management[.]" [*Id*. at 6]. Plaintiff also stated that "[e]verything in the medical field is case management. Everything in a business is case management." [*Id*. at 11]. As to "interviewing skills," he noted that he interviewed people as a police officer, although not in the hiring context. [*Id*. at 6]. Plaintiff also stated that "in the medical field you're interviewing people daily[.]" [*Id*. at 7]. Plaintiff responded to the claim that he had no experience directly interacting with the public by stating that all his prior positions involved

direct interaction with the public.  [*Id*. at 10].  Plaintiff testified that he was never given any reason, other than those listed in the bypass letters, for why he was not hired.  [*Id*. at 13].

Plaintiff stated that he was never told who was making employment decisions or which agency they worked for.  [Doc. 52-1 at 9].  Plaintiff contended that his interviews were arranged through DOHR, and, in most cases, after the first-round interviews, he received an e-mail from DOHR setting up another interview.  [*Id*.].  Plaintiff also complained that DOHR made it difficult to understand the chain of command and which agency makes what decisions.  [*Id*. at 20].

In an interrogatory response, Plaintiff complained that during a second-round interview at DHS, conducted by "three females," he was "lied to twice about yearly salary." [*Id*. at 21].  He stated that he "[t]ried to correct [the statement about the salary] at that time without success," and "[o]nly after calling DOHR directly was the lie corrected," at which point he "received a phone apology."  In his deposition, Plaintiff stated that, after he informed the interviewer's that she had stated the incorrect salary "she still argued with [him]."  [*Id*.].  When asked if he thought that arguing with the interviewer could have impacted the employment decision, Plaintiff responded, "I can't reach that conclusion.  I don't know what's in these ladies' minds."  [*Id*. at 21-22].  Plaintiff stated that the salary for the position was $27,000, but the interviewer told him that it was $24,000.  [*Id*. at 23].  The interviewer asked him whether he would be willing to work for such a low salary, and he responded, "If I wasn't willing to work for the salary, I wouldn't be here."  [*Id*.].

Plaintiff summarized his complaint as involving: (1) misinformation or misrepresentations about using e-mail or phone for communication about second-round interviews;[6] (2) misinformation about salary; and (3) that less-qualified people were hired instead of him. [*Id*. at 25].

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's case," at which point the non-moving party, to withstand summary judgment, must identify facts in the record that create a genuine issue of material fact. *Id*. at 324-25.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,*

---

[6] Regarding the telephone call, Plaintiff testified that, in an application for a position with the Department of Veterans' Services, Tim Forte gave him false information about the policy regarding whether an e-mail invitation was required for second-round interviews. [*Id*. at 17-18]. Forte apparently called Plaintiff to offer him a second-round interview, rather than e-mailing him. [*Id*. at 18]. However, because no application with the Department of Veterans' Services is mentioned in the second amended complaint, the Court concludes that the matter of the use of telephone calls or e-mails to communicate with applicants is not a proper matter within the scope of this action.

*Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it may affect the outcome of the case under the applicable substantive law, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.  When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.    Analysis

### A.  State as Defendant

In their motion for summary judgment, Defendants first argue that Plaintiff may only bring suit against DOHR because, despite listing DOHR and the State of Tennessee as separate defendants, Plaintiff makes no independent allegations against the State of Tennessee, and, regardless, a claim against DOHR is the same as a claim against the State. [Doc. 47 at 3-4].  However, Defendants cite no law in support of this position.  [Doc. 47]. Moreover, Plaintiff does not address this argument in his response.  [Doc. 50].

Independent research has not uncovered any case law directly on point.  However, in the context of civil rights actions brought under 42 U.S.C. § 1983, the Supreme Court has held that "a suit against a state official in his or her official capacity is not a suit against

14

the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Additionally, in the Eleventh Amendment context, the Supreme Court has held that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'"  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

In light of this case law, the Court concludes that a lawsuit against a state agency is ultimately a lawsuit against the State itself.  Therefore, because Plaintiff has identified no independent facts against the State of Tennessee, but appears to merely include it as a Defendant based on the actions of the defendant agency, the Court concludes that the inclusion of the State as a defendant is duplicative.  Accordingly, the Court will **GRANT** summary judgment in favor of the State of Tennessee for this reason.

### B.  DOHR Liability for Hiring Decisions of Other Agencies

Second, Defendants contend that the hiring agencies had legitimate reasons for selecting other candidates, and DOHR met all statutory and constitutional duties to ensure a fair hiring process.  [Doc. 47 at 4].  Defendants state that DOHR ensures that eligible candidates are referred to the hiring agency based on objective minimum qualifications, and DOHR included Plaintiff on every list of eligible applicants referred to the hiring agencies for the six positions at issue in the second amended complaint.  [*Id*. at 5].  Defendants state that DOHR did not decide which candidates to invite for second-round interviews or who to hire; those decisions were made by the hiring agencies.  Further,

Defendants state that DOHR examined the reasons provided by the hiring agencies for hiring other candidates, pursuant to Tennessee's veteran's preference law, and confirmed that the reasons provided related to the specific needs of the agency. Plaintiff responds that, although DOHR was not the hiring agency, it was responsible for certifying that the hiring agency's choice complied with equal employment opportunity laws, and certified that there was no sex discrimination. [Doc. 50 at 6].

Title VII provides that "[i]t shall be an unlawful employment practice for an *employer*—(1) to fail or refuse to hire . . . because of [an] individual's . . . sex[.]" 42 U.S.C. §2000e-2(a) (emphasis added). It further provides that "[i]t shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, an individual because of his . . . sex[.]" 42 U.S.C. § 2000e-2(b). An "employment agency" is defined as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c).

Under the plain language of Title VII, DOHR cannot be held liable for failure to hire Plaintiff, because Plaintiff indisputably did not apply for any positions with DOHR, and therefore, DOHR was not the relevant "employer" under Title VII. Moreover, even assuming that DOHR qualified as an "employment agency" within the meaning of Title VII, DOHR did not "fail or refuse to refer [Plaintiff] for employment." Instead, the facts clearly establish that DOHR included Plaintiff on the list of eligible applicants that it provided to the hiring agency for each of the positions at issue. Further, Plaintiff has

asserted no factual basis for a claim that DOHR "otherwise [] discriminate[d] against" him. Indeed, other than the claim that he was not hired, the only complaints Plaintiff raises, relevant to the positions named in the second amended complaint, were that: (1) an interviewer from DHS "lied to" him about the position's salary; and (2) DOHR made the "chain of command" unclear. As to the salary dispute, Plaintiff himself admits that the incorrect salary was quoted by an employee of DHS, and, once he called DOHR about the issue, the matter was corrected, and he received an apology. Thus, by Plaintiff's own account, DOHR was not involved in any wrongdoing with regard to the salary issue. Further, as to his complaint that DOHR does not make the "chain of command" clear, Plaintiff's generalized statement is inadequate to support any Title VII claim. Plaintiff has not even alleged how he was harmed by not knowing the "chain of command" at DOHR, or how the confusion related to his sex.

Accordingly, the Court concludes that, viewing the facts in the light most favorable to Plaintiff, Plaintiff nonetheless has not established a Title VII claim against DOHR, and thus, DOHR is entitled to judgment as a matter of law. The Court will **GRANT** summary judgment in favor of DOHR and dismiss the action on this ground. Nevertheless, for the sake of completeness, the Court will address whether Plaintiff has established a valid Title VII claim for failure-to-hire.

### C. Failure-to-Hire Claim

Defendants assert that Plaintiff has not established a *prima facie* claim of disparate impact. [Doc. 47 at 6-7]. Defendants contend that Plaintiff failed to identify any DOHR hiring policy or protocol that results in disparate impact on male applicants. [*Id*. at 7].

Plaintiff responds that he has "stated a valid claim for violation of Title VII against DOHR[.]" [Doc. 50 at 5]. Plaintiff states that he is male, all applicants selected were female, he was well-qualified for each of the positions, and was likely more qualified than at least some of the selected candidates. Plaintiff contends that the issue of whether an allegedly legitimate business reason is merely pretext is a jury question. Plaintiff contends that he had the necessary experience in customer service, working with vulnerable populations, coordinating services for individuals and families, case management, and interviewing skills, based on his prior positions as a police officer, deputy sheriff, drug enforcement officer, Adult Cardiac Life Support Instructor, major in the U.S. Army, business owner, and nurse anesthetist. [*Id.*].

Defendants reply that Plaintiff's allegation of discrimination is simply based on his own opinion that his prior work experience is superior to that of other applicants. [Doc. 52 at 2]. Defendants state that hiring agencies best understand who will be the best fit in their organization, and experience is not the sole deciding factor. Defendants note that the DHS positions required skills in resolving conflicts, promoting a positive image of DHS, customer service, approachability, and compassion, and Plaintiff did not exhibit these qualities in a second-round interview with DHS when he argued with interviewers regarding a mistake about the position's salary. Moreover, Defendants state that there is no evidence that Plaintiff articulated to the hiring agencies how his experience as a police officer or nurse anesthetist translated to case management skills required by DHS. Additionally, Defendants contend that Plaintiff was overqualified for the entry-level case manager position with DIDD, and such is a legitimate business decision. [*Id.*]. Finally,

Defendants assert that the clinical app coordinator position with DOH required experience with health informatics, implementing systems design, or with electronic health record systems, but Plaintiff lacked such experience. [*Id*. at 2-3].

Defendants characterize Plaintiff's claim as a disparate impact claim. However, based on Plaintiff's second amended complaint and response to the motion for summary judgment, the Court concludes that Plaintiff's claim is more accurately categorized as a Title VII failure-to-hire claim. The Court has previously addressed why DOHR is not an appropriate defendant to such a claim, but the Court will nevertheless look at the merits of the claim as an alternative basis for dismissal.

When a plaintiff's claim of discrimination is based on circumstantial evidence, as here, courts apply the *McDonnell Douglas*[7] burden shifting framework. *McClain v. Nw. Community Corr. Center Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). Under this burden-shifting framework, Plaintiff first bears the burden of establishing a *prima facie* case of disparate treatment in a failure-to-hire case. *White v. Columbus Metro. Housing Authority*, 429 F.3d 232, 240 (6th Cir. 2005). Once Plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory explanation for its actions. *Seay v. Tenn. Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003). Finally, after the defendant articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to demonstrate that the employer's explanation is pretext. *McDonnell Douglas*, 411 U.S. at 802-04, 807.

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

## 1. *Prima Facie* Case

In order to show a *prima facie* case of discrimination in the failure-to-hire context, plaintiff must show that: (1) he is a member of a protected class; (2) he applied for and was not hired for a job; (3) he was qualified for the job; and (4) he was rejected for the position and the employer continued to seek applications from persons with plaintiff's qualifications and/or a person outside of the plaintiff's protected class was hired.[8] *McDonnell Douglas*, 411 U.S. at 802; *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 166 n.12 (6th Cir. 2004). Plaintiff can clearly establish the first, second, and fourth elements of the *prima facie* case. Plaintiff is a male, he applied for the six positions discussed above, and was not hired, but rather, a female was hired in each instance.

As to the third factor, the parties appear to dispute whether Plaintiff was qualified for some of the positions for which he applied. However, in evaluating the qualifications component of the *prima facie* case, the Court looks only to the applicant's general, objective qualifications, including his "education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler v. Whit's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003) (*en banc*). "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* The Court concludes that Plaintiff has shown that

---

[8] Alternatively, the plaintiff can establish the fourth element by showing that he was treated differently than a similarly-situated applicant outside of his class. *Birch*, 392 F.3d at 166 n.12. However, because Plaintiff can establish the fourth element by a showing that a person outside his protected class was hired, this alternative is irrelevant in the instant case.

he met the "minimum objective criteria" for the six positions at issue. Such is evidenced by the fact that DOHR, by its own admission, reviewed his applications prior to the first-round interviews, concluded that he met the minimum objective requirements for the positions, and included his name on the lists of eligible candidates provided to the hiring agencies. Given the lenient standard for determining whether a plaintiff was qualified for the position, at the *prima facie* stage, the Court concludes that this evidence is enough to find that Plaintiff has established a *prima facie* claim of sex discrimination.

## 2. Legitimate, Non-Discriminatory Reason

This legitimate, non-discriminatory reason provided by an employer should be "clear and reasonably specific" and supported by "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision [was] not motivated by discriminatory animus." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 257-58 (1981)).

In this case, the hiring agencies' reasons for not hiring Plaintiff for each of the relevant positions is particularly clear on the record, because the hiring agencies were required to document their reasons at the time of their decision, in writing, for purposes of the Tennessee veterans' preference law. For the four Eligibility Counselor 1 positions at DHS, DHS specified that, after second-round interviews, Plaintiff was not selected due to the following: (1) his lack of experience working with a vulnerable population and coordinating services for individuals and families; (2) his lack of customer service experience; (3) his experience being limited to the medical field; (4) his lack of experience in case management; (5) his lack of interviewing skills; (6) his lack of experience directly

interacting with the public; and (7) his lack of experiencing interpreting and implementing policy. [Doc. 48-2 at 7-9, 12]. Each of these reasons are clear and reasonably specific reasons having to do with the specific requirements of the job. Accordingly, the Court concludes that the reasons offered by DHS were legitimate, non-discriminatory reasons for not hiring Plaintiff.

For the Case Management Program Specialist position, DIDD concluded, based on Plaintiff's application, that he was overqualified for the position. [Doc. 48-2 at 10]. "An employer may legitimately refuse to hire persons who are overqualified. However, a conclusory statement that a person is overqualified may easily serve as a mask for [] discrimination." *Brewton v. Propulsion Technologies, Inc.*, No. 93CV323, 1995 WL 597377 at *5 (N.D. Ohio, Apr. 7, 1995) (citing *Bay v. Times Mirror Magazines Inc.*, 936 F.2d 112, 118 (2d Cir. 1991)) (internal citation and quotation marks omitted). Accordingly, the Court concludes that DIDD's statement that Plaintiff was overqualified is a legitimate, non-discriminatory reason for not hiring Plaintiff, although the Court will carefully review the evidence for indications that such was pretext.

Finally, as to the Clinical App Coordinator 1 position, DOH concluded, based on Plaintiff's application, that he did "not possess the medical/clinical knowledge or skills to perform the job." [Doc. 48-2 at 11]. On its face, this is a clear and reasonable reason for DOH's failure to hire Plaintiff for the position. Because the hiring agencies provided legitimate, non-discriminatory reasons for failing to hire Plaintiff, the burden shifts back to Plaintiff to prove that these reasons were merely pretext.

### 3. **Pretext**

To establish pretext, Plaintiff must show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Human Serv.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Plaintiff's argument that the hiring agencies' reasons for not hiring him were pretextual seems to be based on the first theory—that the proffered reasons had no basis in fact. Under this method, the plaintiff must show "more than a dispute over the facts" upon which the employer relied. *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Rather, the plaintiff must put forth evidence that the defendant did not "honestly believe" in the reason given for its employment decision. *Id.* Moreover, a plaintiff cannot rely on "mere personal belief, conjecture and speculation" as these are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (internal alteration omitted). Additionally, "[t]he fact that a court may think that the employer misjudged the qualifications of applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretext for discrimination." *Burdine*, 450 U.S. at 259.

Plaintiff cannot meet his burden of establishing pretext, because he cannot show that the hiring agencies did not honestly believe the reasons that they provided for selecting other candidates. Although Plaintiff now tries to explain how his prior experience (much of which is from before 1976, when Plaintiff began working as a nurse anesthetist) is relevant to the skills that the hiring agencies found lacking, there is no evidence that

Plaintiff ever presented these arguments about his prior experience to the hiring agencies, before the hiring decisions were made. Moreover, the Court concludes that the explanations for not hiring Plaintiff provided by the hiring agencies were vastly reasonable. For example, Plaintiff's own account of one of his second-round interviews with DHS is that he argued with an interviewer over a $3,000 difference in the stated yearly salary. In light of that evidence, it was vastly reasonable for DHS to conclude that Plaintiff's attitude and demeanor were not suited for a position requiring customer service skills.

Additionally, Plaintiff's attempts to explain how he had all the necessary skills are feeble. For example, regarding his experience in case management, Plaintiff stated in his deposition that "everything [in the medical field and business] is case management," and this summarizes Plaintiff's general attitude towards the required skills. Although Plaintiff may have experience with what he may label "case management," it is clear that his prior experience does not include the type of "case management," that would directly translate to the positions for which he applied. Likewise, working with vulnerable populations as a police officer or nurse is entirely different than working to help members of a vulnerable population obtain public services and benefits, as was required for the DHS positions. Ultimately, for each of the positions at issue, Plaintiff claims that the reasons provided for selecting another candidate over him were false, based on his own opinion of his prior experience compared to that of other candidates. This "mere personal belief, conjecture and speculation" is insufficient to establish pretext. Accordingly, even if DOHR or the State of Tennessee were proper defendants against whom Plaintiff could raise a claim of sex discrimination for failure-to-hire, Plaintiff has not established a valid claim of sex

discrimination under Title VII.  Therefore, on this alternative basis, the Court will **GRANT** summary judgment in favor of Defendants.

### IV.    Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [doc. 46] will be granted, and this case will be dismissed.  An order consistent with this opinion will be entered.

_____<br>
s/ Leon Jordan<br>
United States District Judge